# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

EMERY L. FEDAK,

    *Plaintiff*,

*v.*                           CASE NO. 13-CV-11058

COMMISSIONER OF             DISTRICT JUDGE LAWRENCE P. ZATKOFF
SOCIAL SECURITY,            MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claims for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 9, 14.)

Plaintiff Emery Fedak was 30 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 27.) Plaintiff's work history includes employment as a helper at a car dealership for one year, a mason tender for one year, an insulator for two years, and a laborer at a magazine company for seven years. (Tr. at 139.) Plaintiff filed the instant claims on October 6, 2010, alleging that he became unable to work on August 16, 2010. (Tr. at 119-24.) The claims were denied at the initial administrative stages. (Tr. at 65-66.) In denying Plaintiff's claims, the Commissioner considered disorders of the back, discogenic and degenerative, and other unspecified arthropathies as possible bases for disability. (*Id.*) On September 8, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Tammy Thames, who considered the application for benefits *de novo*. (Tr. at 7-46.) In a decision dated October 14, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 18.) On November 8, 2011, Plaintiff requested a review of this decision. (Tr. at 5-6.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on January 14, 2013, when, after review of additional exhibits[2] (Tr. at 203-06, 390-408), the Appeals Council denied Plaintiff's request for

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

review. (Tr. at 1-4.) On March 8, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B.    Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th

Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.      Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. § 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. § 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and

considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. § 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2010, and that Plaintiff had not engaged in substantial gainful activity since August 16, 2010, the alleged onset date. (Tr. at 12.) At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar-sacral spine and cervical spine, with chronic neck pain and low back pain were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 12-13.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. at 17.) The ALJ also found that as of the alleged disability onset date, Plaintiff was 29 years old, which put him in the "younger individual age 18 - 49" category. *See* 20 C.F.R. §§ 404.1563, 416.963. At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 13-17.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 17-18.)

### E.    Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff sought treatment at Bay Regional Medical Center and Covenant Medical Center from 2010 to 2011. (Tr. at 224-87, 324-49.) Plaintiff was also treated by Brent Raap, D.O., in 2010 and 2011. (Tr. at 207-23, 307-19, 360-74.)

An MRI of Plaintiff's lumbar spine taken on August 23, 2010, showed "[m]ultiple level degenerative changes"; the "findings at L4-L5 are most notable and have considerably increased, likely explaining the patient's symptoms." (Tr. at 212-13, 310-11.)

Plaintiff was also treated by Siva Sriharin, M.D., and at Bay Neurosurgery Associates in 2010 and 2011. (Tr. at 288-306, 375-89.) On September 5, 2010, Dr. Sriharin examined Plaintiff and indicated that Plaintiff "does wish to proceed with surgery." (Tr. at 217, 315, 327.) On September 28, 2010, Dr. Sriharin performed a posterior lumbar decompression with L4-L5, L5-S1 diskectomy and fusion L2-L3, L3-L4, L4-L5, L5-S1 with TLIF grafting L4-L5, L5-S1. (Tr. at 228-29, 244-46, 298-305, 333-44.) Dr. Sriharin noted that a post-operative MRI scan "actually looked good with no evidence of cord compression or any other problems . . . [and] with marked improvement in the preoperative disk herniations. [Plaintiff] was assessed for rehabilitation but felt to be too high level. He was otherwise ambulating fine . . . ." (Tr. at 228.)

On October 14, 2010, an MRI of Plaintiff's thoracic spine showed "[s]table right paracentral disc protrusion at T7-T8 and T8-T9" and "[t]iny left paracentral disc protrusion at T5-T6." (Tr. at 345.) The following day, October 15, 2010, an MRI of Plaintiff's lumbar spine showed "[m]ild right interforaminal disc herniation at L4-L5 resulting in mild right neural foraminal narrowing[,]" "[f]ocal central disc protrusion at L3-L4 impinging on the ventral aspect of the thecal sac resulting in mild spinal stenosis," and "[t]iny focal central disc protrusion at L2-L3 without spinal stenosis or foraminal stenosis." (Tr. at 296, 346.)

On November 17, 2010, x-rays of Plaintiff's lumbosacral spine showed "[p]ostsurgical changes is stable in appearance since October 8." (Tr. at 348.) Also on November 17, 2010, Dr. Sriharin noted that Plaintiff was "still kind of walking listing to one side a little bit" but that his "legs are feeling fine" and that he "doesn't really have too much back pain. Plain x-rays show a nice straight lumbar spine with good position of the instrumentation." (Tr. at 294, 319.)

On January 19, 2011, Dr. Sriharin noted that Plaintiff "continues to complain of odd posture of his back; there are some spasms in the left lower back area. His plain x-rays show stable fusion.

I am not sure what is causing his symptoms. He tends to have a lot of unusual symptoms and pain exaggerated behavior." (Tr. at 349.)

On April 19, 2011, S.T. Chakravarthi, M.D., a neurosurgeon, examined Plaintiff and noted that Plaintiff's "MRI scan lumbar spine showed no evidence of any recurrent disc disease . . . . Advised him to be as active as he can, do not worry about the scoliosis, start aqua therapy . . . . I would not advise any further surgical intervention. It is a matter of time, he will improve." (Tr. at 387.)

On July 1, 2011, Dr. Sriharin noted that Plaintiff had complained of right leg numbness so he sent Plaintiff to "Dr. Chakravarthi for a second opinion regarding the scoliosis, and Dr. Chakravarthi did not feel anything major is going on. His plain x-rays show stable fusion. I am not sure what is giving him this new pain . . . ." (Tr. at 364, 385.)

On July 20, 2011, Dr. Sriharin completed a lumbar spine impairment questionnaire. (Tr. at 352-59.) Dr. Sriharin listed Plaintiff's symptoms and concluded that Plaintiff could sit for four hours and stand or walk for two hours in an eight-hour workday, could lift and carry up to five pounds occasionally, that Plaintiff's pain would interfere with his concentration "periodically," that he could tolerate "low stress," that he would need unscheduled breaks every three to four hours for twenty minutes, that he will have good days and bad days, that he would likely be absent from work about two to three times a month, and that he should avoid wetness, temperature extremes, and do no pushing, pulling, kneeling, bending or stooping. (Tr. at 355-58.)

On July 27, 2011, Dr. Sriharin indicated that Plaintiff "is actually doing quite well. He is doing better than he was last time. He is not having too much pain now. He is walking better. He is walking straighter." (Tr. at 384.) The doctor noted that Plaintiff "has been out of his brace for

a while. We did get a followup MRI scan. The MRI scan actually looks good with no evidence of any ongoing compression anywhere." (*Id.*)

A Multiple Impairment Questionnaire was completed by Dr. Raap on August 11, 2011. (Tr. at 367-74.) Dr. Raap indicated that the laboratory and test results he relied on were those of Dr. Sriharin and that he did "not have full copies[.]" (Tr. at 369.) Dr. Raap indicated that Plaintiff could only sit for three hours and stand or walk for zero to one hour during an eight-hour workday. (Tr. at 370.)

At the administrative hearing, when asked what caused him to stop working in August of 2010, Plaintiff responded, "I've been having lower back trouble since about '05, and about a week before I left work my whole lower back started to hurt really bad and the center of my body completely shifted right over to the right and I was hunched over and could barely walk." (Tr. at 29.) Plaintiff added that he has "back spasms all the time." (Tr. at 31.) Plaintiff stated that when he speaks with Dr. Sriharan about the fact that the medication has not prevented pain and spasms, Dr. Sriharan told him "it's a healing process, is what he kept telling me every time I go in there." (Tr. at 32.) When asked whether he wears a brace, Plaintiff responded, "I haven't worn it in about a month and a half." (Tr. at 36.) When further asked whether he had to wear the brace all the time, Plaintiff responded, "All the time unless I was sleeping." (*Id.*) When asked why he stopped using it, Plaintiff indicated that his doctor "told me I could take it off and try to walk around to get a feel without it." (*Id.*)

Plaintiff testified that he is able to take his son to school, take care of his personal hygiene, cook, do dishes, and drive cars that have comfortable seats. (Tr. at 34-35, 39.) Plaintiff stated that he can walk "maybe an eighth of a mile and I'll get a really bad sharp pain in my left side." (Tr. at 36.) When asked which is worse, standing, walking, or sitting, Plaintiff responded, "Standing

and sitting are probably about the two worse. I can walk short distances and it's not quite as bad as standing or sitting." (Tr. at 38.) Plaintiff stated that he can sit, "[d]epending on the type of chair, anywhere from 20 minutes to two hours" at a time. (Tr. at 38-39.) After that, Plaintiff indicated that he has to "get up and walk around or go lay down for a little while" and that he lies down about 90 percent of the day. (Tr. at 39.)

At the administrative hearing, the ALJ asked the vocational expert ("VE") to consider an individual with Plaintiff's background who

> [could] [o]ccasionally lift and/or carry 20 pounds, frequently lift and/or carry ten pounds, stand and/or walk a total of about four hours in an eight-hour workday, sit a total of about six hours in an eight-hour workday, requiring a sit-stand option enabling an individual to change positions every 30 to 45 minutes, ability to perform pushing and/or pulling activities, including operation of hand and/or foot controls limited to an occasional basis. Occasionally perform climbing of ramps or stairs, frequent balancing, occasionally stooping, kneeling, crouching or crawling. Never climbing ladders, ropes or scaffolds. Avoid concentrated exposure to vibration and hazards.

(Tr. at 44.) The VE responded that such a person could not perform Plaintiff's past relevant work but could perform the 3,000 sedentary unskilled assembler jobs and the 3,000 light unskilled machine operator jobs available in Michigan. (Tr. at 44-45.) In response to the ALJ's question, the VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"), except that the DOT does not address sit-stand options. (Tr. at 45.)

## F.    Analysis and Conclusions

### 1.    Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of light work. (Tr. at 13-17.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling

of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

## 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 9.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the "ALJ failed to follow the treating physician rule" by failing to give the opinions of Plaintiff's treating neurosurgeon, Dr. Sriharan, and Plaintiff's treating physician, Dr. Raap, controlling weight (Doc. 9 at 9-13), and by failing to properly assess Plaintiff's credibility. (*Id.* at 13-15.)

## a. Credibility Determination

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility

determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645, at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky,* 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then

determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." SSR 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(I)     [D]aily activities;

(ii)    The location, duration, frequency, and intensity of . . . pain;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)     Treatment, other than medication, . . . received for relief of . . . pain;

(vi)    Any measures . . . used to relieve . . . pain.

*Felisky*, 35 F.3d at 1039-40; SSR 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); SSR 96-7p, at *5.

In the instant case, the ALJ considered each of the above factors. (Tr. at 13-15.) I suggest that the ALJ's findings are supported by substantial evidence. "A claimant's testimony may be discounted if it is contradicted by the medical reports and other evidence of record." *Clendening v. Comm'r of Soc. Sec.*, 482 F. App'x 93, 95 (6th Cir. 2012). I suggest that on the instant record, Plaintiff's statements have been contradicted.

14

I first suggest that the ALJ's findings are supported by Plaintiff's own testimony that he can take his son to school, take care of his personal hygiene, cook, do dishes, walk short distances, sit from twenty minutes to two hours, and drive cars that have comfortable seats. (Tr. at 34-35, 39.) I further suggest that the ALJ's findings that Plaintiff is less than fully credible are expressly supported by Plaintiff's treating neurosurgeon's notations regarding credibility. On January 19, 2011, Dr. Sriharin expressed skepticism over Plaintiff's pain since the medical evidence showed a stable fusion; thus, Dr. Sriharin stated, "I am not sure what is causing his symptoms. He tends to have a lot of unusual symptoms and pain exaggerated behavior." (Tr. at 349.) In addition, Dr. Sriharin indicated that he had referred Plaintiff to "Dr. Chakravarthi for a second opinion regarding the scoliosis, and Dr. Chakravarthi did not feel anything major is going on. His plain x-rays show stable fusion. I am not sure what is giving him this new pain . . . ." (Tr. at 364, 385.)

In addition, Dr. Sriharin's more generalized notes regarding Plaintiff's condition support the ALJ's findings. Dr. Sriharin noted that a post-operative MRI scan "actually looked good with no evidence of cord compression or any other problems," that "the lumbar MRI scan looked very good with marked improvement in the preoperative disk herniations," and that Plaintiff "was otherwise ambulating fine . . . ." (Tr. at 228.) On November 17, 2010, Dr. Sriharin noted that Plaintiff's legs were "feeling fine" and that he didn't "really have too much back pain. Plain x-rays show a nice straight lumbar spine with good position of the instrumentation." (Tr. at 294, 319.) On July 27, 2011, Dr. Sriharin indicated that Plaintiff was "doing quite well," "not having too much pain," "walking better . . . and straighter," and had "been out of his brace for a while." (Tr. at 384.) Further, Plaintiff's "MRI scan actually looks good with no evidence of any ongoing compression anywhere." (*Id.*)

Additionally support can be found in Dr. Chakravarthi's notes that Plaintiff's "MRI scan lumbar spine showed no evidence of any recurrent disc disease." (Tr. at 387.) Therefore, Dr. Chakravarthi "[a]dvised him to be as active as he can, do not worry about the scoliosis, [and] start aqua therapy." (*Id*.) The doctor stated that he "would not advise any further surgical intervention. It is a matter of time, he will improve." (*Id*.)

Finally, I note that, since surgery, Plaintiff has been treated with prescription medication only; such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007). I therefore suggest that substantial evidence supports the ALJ's conclusions.

I therefore suggest that the ALJ's finding that Plaintiff was not fully credible and is not disabled is supported by substantial evidence and should not be disturbed.

### b.    Treating Sources

### I.    Standards

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (2006).

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). "The more a medical source

presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

Since the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, the ALJ "will not give any special significance to the source of an opinion[, including treating sources], on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section[,]" i.e., whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, residual functional capacity, and application of vocational factors. 20 C.F.R. § 404.1527(d)(3). A "[d]octor's notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the 'opposite of objective medical evidence.' [Thus,] [a]n ALJ is not required to accept the statement as true or to accept as true a physician's opinion based on those assertions." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011). "Otherwise, the hearing would be a useless exercise." *Id.*

"[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight . . . [but] 'is just one more piece of evidence for the administrative law judge to weigh . . . .'" *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006)). Once the treating source is placed on the same level as other medical opinions, the treating source opinion should not be subjected to "greater scrutiny" than the non-treating sources, especially when there are more

17

flagrant inconsistencies in the opinions of the non-treating sources. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379-80 (6th Cir. 2013).

If the ALJ declines to give controlling weight to a treating source's opinion, then he must use the following factors to determine what weight the treating source opinion should be given: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. These factors may be applied to all medical opinions, not just treating sources. SSR 06-3p, 2006 WL 2329939, at *3 (2006). However, because of the special status of treating source opinions, where the ALJ "failed to conduct the balancing of factors to determine what weight should be accorded these treating source opinions . . . , [t]his alone constitutes error." *Cole v. Comm'r of Soc. Sec.*, 652 F.3d 653, 660 (6th Cir. 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)). But this error is not always dispositive and can be considered "harmless error" if: "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation." *Cole*, 661 F.3d at 940 (quoting *Wilson*, 378 F.3d at 547).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Acceptable medical sources" who can be considered treating sources include "licensed or certified psychologists." SSR 06-03p, 2006 WL 2329939, at *1-2 (2006). After treating sources, a "nontreating source, who physically

examines the patient 'but does not have, or did not have an ongoing treatment relationship with' the patient, falls next along the continuum." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). "'The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 F. App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Cole*, 2011 WL 2745792, at *4. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

ii.     **Analysis**

The ALJ determined that the opinions of both Drs. Sriharin and Raap, as evidenced in the questionnaires, were of "limited probative weight." (Tr. at 15.) I suggest that the ALJ's decision regarding the weight to be given the treating source opinions is supported by substantial evidence. First, the record consists exclusively of "well-supported contradicting evidence" such that the

treating physician's evidence is "no longer entitled to controlling weight . . . [but] 'is just one more piece of evidence for the administrative law judge to weigh . . . .'" *Bauer, supra.* Post-surgical evidence from before and after the questionnaires were completed and conclusions drawn by the treating sources indicate a much less than disabling condition. Dr. Sriharin noted that a post-operative MRI scan "actually looked good with no evidence of cord compression or any other problems . . . [and] the lumbar MRI scan looked very good with marked improvement in the preoperative disk herniations." (Tr. at 228.) On October 15, 2010, an MRI of Plaintiff's lumbar spine showed only "[m]ild" impingement. (Tr. at 296, 346.) On November 17, 2010, x-rays of Plaintiff's lumbosacral spine showed "[p]ostsurgical change[] is stable." (Tr. at 348.) On that same date, Dr. Sriharin noted that Plaintiff's "x-rays show a nice straight lumbar spine with good position of the instrumentation." (Tr. at 294, 319.) Dr. Sriharin was skeptical of Plaintiff's subjective complaints, noting that Plaintiff "tends to have a lot of unusual symptoms and pain exaggerated behavior" (Tr. at 349), but Dr. Sriharin incorporated limitations exceeding Plaintiff's subjective complaints. (Tr. at 352-59.)

The well-supported objective medical evidence above also contradicts Dr. Raap's conclusions and thus renders it just another piece of evidence for the ALJ to consider. (Tr. at 367-74.) In addition, it appears that Dr. Raap performed no tests or evaluations of his own but instead relied on Dr. Sriharin's records and even those were incomplete. (Tr. at 369.)

Since the objective medical evidence contradicts the conclusions of Drs. Sriharin and Raap, it appears that the questionnaires submitted by them relied heavily on "symptom[s] or subjective complaint[s] from the patient" and therefore that the "ALJ is not required to accept the statement as true or to accept as true a physician's opinion based on those assertions." *Masters, supra.*

I therefore suggest that the ALJ's decision regarding the weight to be given the treating source opinions as evidenced in the questionnaires was supported by substantial evidence and was not in error.

### 3. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with

the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

_s/_ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗

CHARLES E. BINDER
Dated: January 30, 2014                    United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  January 30, 2014                    By____s/Patricia T. Morris_____
                                           Law Clerk to Magistrate Judge Binder